Good morning and may it please the court. I represent Pedro Babauta, who was deprived of his right to have the jury decide the jurisdictional element of the section 1001 offenses for which he was convicted. Mr. Long, you may want to state your name. This is taped. I'm sorry. My name is Anthony Long and I represent Mr. Pedro Babauta. In addition to this deprivation, Mr. Babauta was also expressly ordered not to introduce any evidence at trial that would contest or challenge the jurisdictional element. Now, these Babautas' trial proceeded. Reversal of the conviction is proper under circuit precedent in light of these deprivations. This court in the en banc decision of United States v. Gowden reversed the conviction on grounds of plain error when the judge and not the jury decided the materiality element of a section 1001 offense. This case, we contend that this case is stronger than in the sense that one of the deprivations occurred pre-trial and there was a pre-trial ruling and the jury was instructed pre-trial that jurisdiction was established as a matter of law and Babauta was expressly prohibited from submitting any evidence challenging jurisdiction at trial and all of this was done over Babauta's objections. More on point, however, we believe would be United States v. Medjuk wherein the trial court in a non-evidentiary pre-trial motion and over defendant's objections decided the jurisdictional element of an offense as a matter of law. That is analogous to this case because here the ruling deciding the jurisdictional issue as a matter of law as well as the order prohibiting Babauta from submitting any evidence contesting jurisdiction was all done at a non-evidentiary pre-trial hearing. Now in Medjuk, the court reversed the conviction on grounds that the error was not harmless. Citing Gowden, the court held that when proof of an element is completely removed from the jury, there cannot be an inquiry into what evidence the jury considered to establish the element as the jury was precluded from considering whether the element existed at all. This principle applies with equal force in this case in the sense that Babauta could not challenge an essential element of the crime and this was analysis as the prosecution suggests, we contend the reversal would still be proper. Homeless error analysis would require the court to determine whether uncontroverted or uncontested evidence establishes the jurisdictional issue beyond a reasonable doubt. Again, Medjuk is instructed from this point because in that case, the court had decided that the issue of nexus of the defendant's conduct to the United States, there would not be any evidence presented on that point. And therefore, the defendant was precluded from submitting evidence on nexus. Let me ask you this. Do you accept the basic principle that when we deal with matters of jurisdiction, such as in this case, the agency jurisdiction issue, that it could compose of aspects of law which should be for the court to decide and there may also be factual aspects within the umbrella of what jurisdiction is all about? And is there anything wrong with accepting that type of dichotomy and leaving it to the court to decide issues of law, what the regulation says, for example, if there are statutes, things of that nature, and let the jury decide whatever factual components there may be involved in the jurisdictional issue? And isn't that what we're talking about here and in Smith and Medjuk and Garden and all those cases, that there is that divide between matters of law for the court and matters of fact for the jury, and that when we evaluate jurisdictional issues, we should try to prescind between the two? And if, in fact, the judge did not submit the factual aspects to the jury, that would be a reversible error? Is there anything wrong with proceeding along those conceptual lines? Well, to an extent, the jurisdictional issue is a combination of fact and law, and we submit that that should go to the jury for the jury to decide, because once they're intertwined like that, it's hard to, let's say, separate them out, where there's a neat, separated issue of law and a neat, separate issue of fact. We instruct the jury on the law all the time. I mean, for example, in narcotics cases, we tell the jury that cocaine and heroin, under the statutory scheme this constitutes, you know, a narcotic. The jury doesn't have to, you know, decide that issue. We tell the jury that issue, because it's purely a matter of statutory law. There's nothing for the jury to decide, but if it's a factual issue that's commingled with the legal issue, then we tell the jury, you decide this particular factual issue on the issue of jurisdiction. Well, for instance, the statute law does say heroin is a contraband and prohibited substance. However, it's up to the jury to decide whether the substance at issue in that case is heroin. Exactly. So that would require a factual determination by the jury. Exactly correct. And I think in this situation, it seems to me that there was a factual aspect that was not presented to the jury that arguably should have been presented to the jury, whether the monthly reports concerned a matter within the EPA's jurisdiction. That should be something, perhaps, that the jury should decide and not the judge decide. That's correct. What's wrong with that assessment of this case? Well, in this case, the judge decided that the matters were ---- They took that discrete factual aspect away from the jury. Correct. Why would that be harmless under the facts of this case? Well, that would not be harmless because there's factual dispute as to whether such a jurisdiction actually existed. That determines an existence of fact. But the monthly reports to the DEQ have to concern compliance with drinking water standards. That's what the jury has to determine. And is there any question here on the basis of this record that that's really absolutely a slam-dunk situation here, which would make it a harmless error? Well, what happens is the jury ---- I mean, excuse me, the reports were from one Commonwealth agency to another with respect to the Commonwealth drinking water regulations. Now the question becomes, how does a report under the Commonwealth regulations from one Commonwealth agency to another then become within the jurisdiction of the EPA? That can only be done by some factual ---- Between the different agencies seems to be a matter of law. Well, between the two local agencies. But the question is as to whether the DEQ was, quote, standing in the shoes or it received primary authority, enforcement authority from the EPA. That's a factual determination. I don't know. I don't see it that clearly. Isn't the answer to Judge Block's question that Medgar and Gordon say it's a structural error? And that's it? That's it. That's correct. That's what we believe. If you look at Medgar 48 for the report of 1110, it says, Gordon, it says we can't inquire. If some element is not submitted to the jury, we can't inquire into whether it's harmless. That's correct. That's what we contend originally that this is structural error. However, to agree with you with that, what is the consequence? Excuse me, Your Honor? What is the consequence of if we were to agree with you? What happens next? Well, if you agree that this is structural error, then the conviction is reversed, and the matter is then remanded back to the district court. For what? For a trial on a retrial on the two counsel which he was convicted. How could you have a retrial? You've just had a trial where the government failed to introduce evidence as to an element of the crime. Isn't that an acquittal? Well, the argument can be made that we are. A retrial barred by double jeopardy? Well, there would be a double jeopardy issue, I think, that could be raised down below to the extent that the evidence that the defendant won was not presented any evidence, and at that point, it would be unfair to the defendant to then have to go through a trial again for the government to what? To defend? I don't think you understand double jeopardy law. Double jeopardy law is not a question of fairness or not. It's simply a rule of law. Well. See, it's a question of how we reverse. I mean, we can reverse one of two ways. We can reverse for failure to submit the matter to the jury, but we can also simply reverse on insufficiencies of evidence and an element of offense. Nothing was presented to the jury to support a judgment of conviction on an element of offense, and if that happens, that's the end of the case. That's the end of the prosecution. That wasn't the outcome in Medjuk, was it? No. In Medjuk, the matter was remanded, I believe, back to the trial court because the court looked and said that, well, there was evidence submitted from which a jury could find the defendant guilty, and so, therefore, it was remanded back to trial. However, in this case, I would assume that I would proffer that there is not any evidence of record that would show or establish sufficient evidence of guilt at all. I understand, you know, the – well, I spoke about the monthly reports. In my opinion, I think that's the only factual issue here that requires reversal. But tell me what you mean by evidence on the other jurisdictional pegs here that I think are really based upon regulatory language and issues of law. What else are you talking about? Okay. For the regulatory, with respect to the granting of authority from the EPA to the DEQ. Evidence has to be submitted there. There has to be something to show where EPA has told – delegated its authority to EPA – I mean, to DEQ. For instance, the indictment itself alleges that there was a delegation of authority from the EPA to the DEQ. It has to be a specific document that says we delegate our authority. This cannot be determined as a matter of law from the regulatory standpoint. There would have to be something that would have to be submitted because what happens if the EPA just picks up a phone and says you have primarily – It's the same as proof of FDIC insurance. In a bank robbery case, government has to come in and bring in a certificate or somebody who says, oh, yes, this bank is insured by the FDIC. They don't do that, sudden death. That's correct. There has to be something to show that there is this sort of delegation of authority because we assume the United States agency does not orally give authority. And how else would an individual know whether there was any promise existing unless there was some sort of written delegation or authorization that was submitted and approved by the EPA? But you talk about here whether an agency is part of the federal government. It seems to me that that's purely an issue of law. Well, EPA is a part of the federal government, but DEQ is not. And what we're dealing here were the monthly reports going to the DEQ, not to the EPA. That's the distinction. They were going to the DEQ. And now how can you say by what basis do you prove that the DEQ was acting in place or in lieu of the EPA? There has to be some evidence or proof of that. And, in fact, in the pretrial motion that the government filed, they attempted to submit such proof, but we concluded that that proof was insufficient because it did not conclusively show that it was in effect in March of 2001, or in March or February or March of 2003, which are the timeframes relevant to the charges that we're here on appeal for. There would have to be something to show that EPA has delegated its authority to DEQ. For instance, in the case of the United States v. Wright out of the Tenth Circuit, they stated, well, the government proved that the EPA had delegated its authority to the Oklahoma, applicable Oklahoma agency, and it proved that that authority was in existence at the time, at the applicable time of the lawsuit. That's what was at issue in the United States v. Wright out of the Tenth Circuit. So what you're saying is what's missing here is the certification that we get by delegating authority, and that's what's missing here. Yes. There would have to be some sort of certification, and there was not any certification. Because how else would you prove that an agency of the Commonwealth of Northern Marianas was in effect? That's not really any of your concern. The fact, I mean, they could come in with a witness. They could come in with a certificate. The point you're making is they didn't do it. That's correct. Whatever it is, it might have been sufficient. It wasn't done. No, it was not done. And we were even precluded from even saying that that wasn't done. We were precluded from saying they haven't shown that. So there are two factual things that you say are missing here. One is the absence of the certificate or evidence about the delegation, and, two, the issue of whether the monthly reports concern compliance with drinking water standards, right? I agree with the first one, whether the ---- That's what we spoke about. Yes. The absence of a certificate or something comparable to establish the delegation. Correct. Second factual issue, do you agree or disagree that it was the failure to let the jury decide whether the monthly reports concerned a matter within the agency's jurisdiction? In other words, concern compliance with drinking water standards? Correct. Those are the two factual things that are missing here. I don't understand what the second one is. Well, the second one ---- Excuse me. What was the second one? The monthly reports to the DEQ have to concern a matter within the jurisdiction. It has to concern compliance with drinking water standards. That's the same issue. It's roughly the same issue. If the DEQ is delegated by the EPA, then they do. So it's really one issue. That would be an accurate assessment. Well, you still have the jury entitled to determine, to look at the monthly reports to make sure that that does concern a matter with drinking water standards, I guess. Right? Well, the jury would then say whether ---- And that's a different issue than from the jurisdictional issue. The jurisdictional issue was, was the DEQ acting in place or in lieu of the EPA? And that would have to ---- Plus, not only they would have to show the grant of delegation or authority, but also that it was in place or in effect at the time of the alleged offenses. Excuse me. If DEQ was able to establish that it was an agency or acting in lieu of the EPA, then you have no quarrel with the notion that the reports that were being sent to DEQ then were a matter within the jurisdiction of the EPA? If the evidence, if there was evidence of record that sufficiently established the existence of a delegation of authority, then that would be, okay, that would ---- Well, not necessarily. Yes, they're an agency of the DEQ, or they're in lieu of the DEQ. You're going to ---- Would you then be arguing the jury also has to make a finding of fact that these reports themselves, or is there some dispute about that? No, I don't think there would be a dispute on the reports themselves. You think that's a matter of law? That's an issue of law that does not go to the jury? I'm not so sure I understand that. No, there is not a ---- this is not an issue of law, because if there's no dispute that the CUC prepared these reports and they have the obligation under the Commonwealth regulation to submit these reports to the DEQ. Now, the issue becomes, was the DEQ acting in lieu of EPA? Okay. And assuming that was established and the evidence of record shows that, this case would still have to be reversed because, as in Medgar, the defendant was not allowed to challenge any of this evidence. I understand that, too. I just want to know what the challenge goes to. Okay. And I think I understand your point. Okay. Let's save a couple minutes for rebuttal. Yes, we'd like to save our remaining time for rebuttal. Thank you very much. Thank you, Your Honor. May it please the Court, my name is Timothy Moran. I represent the United States. What are you going to do about Medgar? Your Honor, this case is not ---- It says it goes to the jury. It says it's structural error. It sounds to me like you misled Judge Munson. Your Honor, this metric does not control this case for two reasons. In the first case, first place, the jury determined the proper factual question in this case, and that was whether the DEQ was implicated with these documents. The jury had to find and did find that these documents were used. The question is, does the DEQ have delegation from the United States government? DEQ is not a U.S. agency, right? That is correct. Okay. So for all we know, they are just a private party. Unless they have a delegation from the United States, it doesn't come within the jurisdiction. And this is what Medgar says. That issue was not presented to the jury, right? Where can we draw the conclusion that as a matter of law, there is this delegation? It's not a factual issue. That delegation was proven in two ways. First, that was the subject of Judge Block's question. Answer my question before you answer Judge Block's question. Yes, Your Honor. Would you repeat your question, please? I said, doesn't Medgar stand clearly for the proposition that the nexus to the United States government has to be proven to the jury? Yes, Your Honor. Medgar would suggest that in a case such as this one. Does it hold that, in fact? It holds that in a case such as this, there is a mixed question of fact and law that the law would determine. Where do you see that? Why don't you tell me where is the mixed question of law and fact, and where do you get this language? It is a question of fact, whether or not you get the language.  Where do you see it in Medgar? The government has to prove, according to Medgar, that the vessel in the Medgar case was within the United States jurisdiction, but it is also a question of fact. Does it say mixed question of law or fact? What is also – but it is also a question of fact. Ask your question. No, Your Honor. It does not say it's a mixed question of law or fact. So you were making it up when you said that's what it holds? You were just guessing? No, Your Honor. Does it not hold that the question of jurisdiction, federal jurisdiction, that somebody falls within the jurisdiction of the United States has to be proved to the jury? That is true, Your Honor. Medgar holds that. That's a holding. It has not been overruled. It's the law of the circuit. Why isn't Medgar – and it further holds in the – in the last paragraph of the action that this is structural error, citing Gordon. Why isn't that the end of this appeal, as far as you're concerned? This was not, in fact, submitted to the jury. The jurisdiction question was not, in fact, submitted to the jury, right? That is correct, Your Honor. The question of – And that's exactly what happened in Medgar. And we said that is reversible error under Gordon. That is correct, Your Honor. Okay. So why doesn't Medgar control this case? Why doesn't this require at least a reversal and quite possibly an acquittal in this case? I would suggest that Medgar does not control for two reasons. Okay. Tell me. The first is that the government proved as a matter of law that there was a delegation  Proved to whom as a matter of law? Proved as a matter of law to the district court, which is what it – But that's what happened in Medgar, too. The government proved it as a matter of law to district court, and we say that's not good enough, citing Gordon. This is something that has to go to the jury. The ruling as a matter of law left open the factual question that the government had to prove at trial, which is that the documents were submitted within DEQ's So that the government proved that the documents were used by the defendant where they were submitted to DEQ. That's the question of fact. And the question of law that the district court ruled on was the delegation of authority from EPA to DEQ. I know what happened. Isn't that exactly what happened in Medgar? And we said that you can't do that, that the nexus to federal jurisdiction has to be submitted to the jury? Your Honor, the second reason why Medgar does not require reversal in this case – Is given up on the first reason? I'm moving to the second, which I think answers your question more directly. Okay. Is that the latter case of Smith, which suggests that the Medgar question is a – can be resolved by a decision of facts and law. In Smith, the Court held that while the government must prove, as Medgar holds, that a vessel is within the United States jurisdiction, it's a matter for the court to determine essentially what that jurisdiction is. That's a 1903F case, and that is a case where Congress has, by statute, said that that is a matter that does not have to be submitted to the jury. The – I mean, there was a particular statutory provision there where Congress has specifically taken the matter away from the jury. Even then, we have a case, as you know, in our circuit that says you have to submit it to the jury anyway. This mixed – this manner of deciding jurisdiction by a mixed question of facts and law does not occur only in Smith. I've cited several cases in which that same thing happened, United States v. Gomez, in which the court ruled as a matter of law that a multi-person apartment building is a – is involved in interstate commerce, and the government only had to prove that it was a multi-state apartment – that it was a multi-person apartment building involved in an arson. There's the Warren case in which the court decided as a matter of law that Schofield Barracks is Federal jurisdiction and that the government then only had to prove that the crime took place on Schofield Barracks. The statute specifically holds that insofar as a factual component of the decision, that must be sent to the jury. That's what Gomez actually holds. That's correct, Your Honor. The factual issue must be submitted to the jury, and we submit that that occurred in this case. Well, how could it possibly have occurred? They dispute that, in fact, there's any delegation between EPA and CEQ. The delegation was from EPA to DEQ. DEQ, rather, yeah. That happened as a matter of law, and the government had to prove. How could it be a matter of law? Tell me how that works. Why is it a matter of law? The EPA, under the State Drinking Water Act, by statute, is directed to provide for regulations. The statute also directs that it will grant primacy to the State agencies, which then receive and compile the Safe Drinking Water Act data. It was that data that was found on the false documents. But you skipped a step. You skipped a step, the step that says it has to designate a local agency as carrying out this function. You just so conveniently just glossed over it as if it didn't exist. And that's the very thing that's at issue here. How do we know that it picked DEQ rather than some other agency or some other entity in Saipan to perform this function? Because EPA adopted DEQ, granted it primacy, and notified that in the Federal Register. That is at page 42 of the excerpts of record. Does it say there that the DEC would constitute a proper agency to delegate this authority to? It says that the DEQ has primacy for purposes of the State Drinking Water Act. I'm looking at that page now. Can you tell me where it is? On the third full paragraph, Your Honor, on the left-hand portion, I determined that the CNMI has met all the conditions of the State Drinking Water Act and subsequently assumed primacy. I've also submitted a portion from the CNMI regulations. You just mumbled something, but you haven't told me what. Where does it say DEQ? Where does DEQ get that? The next page of the Excerpt of Records, page 43, is from the CNMI Register, the equivalent of the Federal Register for the Commonwealth of Northern Mariana Islands, in which it acknowledges that the DEQ is applying the State Drinking Water Act. So it's an acknowledgment of the grant of primacy that was made in 1992, I believe, and was ongoing. Does it say we were anointed? It acknowledges that the anointment had happened. What if they're wrong? What if they're mistaken? I still haven't seen any evidence that says that the EPA has, in fact, delegated DEQ. It does say DEQ saying, gee, we were delegated, and that may be good, and maybe if the jury believes it, that might be enough. What I also submitted at page 38 of the Excerpt of Records is an excerpt from the CNMI's application for primacy, in which it indicates that DEQ is to be the agency that... from Saipan, asking for this. Where does it show that this was granted? Right. That's the application. Then in the excerpt from the Federal Register is the granting of that application. Okay. Where is that? That was page 42 again, Your Honor. I've got page 42, but there are a lot of words on page 42. Why don't you direct me exactly to the words you want me to follow? On the second paragraph, Your Honor, an application was received from the administrator of the Department of Environmental Quality, and that was asking for primary enforcement responsibility, and that's the application that was granted. So it acknowledges that the application came in from the DEQ, and that's the application that was granted. You know, you're partly reading, you're partly paraphrasing. It makes it very difficult to follow what you're talking about. Let's start counting paragraphs, okay? You're looking at the page on page 42. Your Honor. Okay. Now, you notice that if you look at the left-hand column, it's divided into paragraphs, okay? So count from the beginning paragraph, the one that says this note is issued. The next paragraph, Your Honor, begins an application. Application dated August 25, 1982, was received from the administrator of the division, okay? Tell me what you want me to read here. Was received from the Division of Environmental Quality requesting that primary enforcement be granted. Your Honor, that is the evidence that the ---- Okay. And where does it say it was granted? On that same ---- in that same column, Your Honor, the next paragraph begins, I have determined that the CNMI has met all the conditions. All right. That document states ---- I'm sorry. I don't see the word granted. That is the best I can offer you on the granting. I do want to address in the time remaining to me a further point made in the Smith case, which is that this is not structural error and is such a harmless error analysis. I think it's missing in conflict with Medjuk and Gordon. Your Honor, the ---- that paragraph, Your Honor, cited in Medjuk cites the Gordon decision. When Gordon went up to the Supreme Court, the Supreme Court never ruled on a harmless error analysis. In fact ---- It doesn't matter, though. It cites ---- it cites it whether it cites it correctly or not. Justice Rehnquist ---- It does hold that it's harmless, that it's not a structural error, does it not, Medjuk? That is what Medjuk says. You're correct, Your Honor. Well, it does more than say it. It holds it. Yes, Your Honor. In fact, it says this is not subject to harmless error review and reverses without actually conducting harmless error review. So I don't think there's any way in which we can read this as anything other than a holding. Right? That is a holding, Your Honor. There are other holdings, including Supreme Court cases, that would ---- that say that harmless error rule does apply. The Supreme Court in its Gordon decision never touched on the issue of harmless error. It was abandoned. It doesn't help you any. And then later ---- Well, Gordon was before Medjuk. And as far as Medjuk interprets Gordon, Medjuk is binding on us. Is there a subsequent? Nader is a Supreme Court case that answers the question that was left unanswered in Gordon and says very clearly that when materiality is not charged to the jury and the element was left out altogether, that was still harmless in the Nader case. So the Nader, which is a Supreme Court case, clearly states that the failure to charge an element entirely to the jury can be harmless error. And there are several other Supreme Court cases, the Rose case and the Pope case among them, which suggests that improperly charging the element or leaving an element out altogether can be harmless error. So the fact that this element may have been misdefined or left out entirely can be harmless error. It is not structural error in this case because it does not go to the theory of the case or the defense. The defense in this case was that someone else had done it or that the documents were not, in fact, false. The defense was not that there was a lack of jurisdiction. And furthermore, the government proved by evidence in the record that there was jurisdiction. They weren't allowed to submit any evidence on this point. Now, they did not preserve that point because they did not make any offer of proof. There is, in fact, no – and their papers don't have any contrary finding. The structural error test is whether the error complained of contributed to the verdict or conversely, as the rule stated in Nader, does the record contain any evidence that could rationally lead to a contrary finding. And I submit that it does not. If you look at anything in this record, Your Honor, I would quest that you look at the testimony of Derek Chamber, which is in the government's supplemental extract. I'm actually back to Nader. And Nader is a case involving an erroneous instruction, not a failure to submit an element to the jury. But let me understand this. The judge did charge the jury that the defendant used a writing or document which protection agency. So the judge did explain that was the first element and incorporated in that instruction that it had to be a matter within the jurisdiction of the United States Environmental Protection Agency. It seems to me that that arguably presents the issue of jurisdiction as one of the elements to the jury. The problem I have is the further instruction that the court gave the jury that the jurisdiction of the United States Environmental Protection Agency. It seems to me that that's a factual matter which was taken from the jury, but that the issue of agency jurisdiction was, you know, articulated to the jury as the first element. So that may possibly be a line of distinction here in terms of whether this could be viewed as harmless error or not. What do you say about that? Your Honor is correct that if there is an error, that instruction that Your Honor cited is the improper one. And it's equivalent to misstating a presumption or to misstating a note. That can be a problem. Well, but that doesn't watch. They were not allowed to put evidence. You were not required to put evidence, and they were not allowed to put evidence in the contrary. So this is not just an instructional problem. This is a problem that the whole matter, the whole question of federal jurisdiction was taken away from the jury. There was a case about erroneous instructions. The evidence was put in. The jury wasn't properly instructed. There was a case in which the Court, the Court there assumed that materiality was an issue for the judge and not for the jury, and so there was no evidence of materiality submitted at all. And the Court found it was harmless because there was overwhelming evidence in the record, and that is the case here. At the government's experts of records at page 95 to 103 is the testimony of Derek Chambers, who is an EPA employee who is on loan to the Department of Environmental Quality who works in the state drinking water program, and he testified. His testimony proves conclusively that there was jurisdiction. All the other witnesses, including the defense witness cited in the supplemental experts of the record at page 106, also acknowledge that the EPA had granted authority to the DEQ, and it's also noteworthy that the jury found that these false documents were material to the EPA, not to the DEQ. So these facts regarding jurisdiction were, in fact, proven to the jury, so they are in the record and available for the Court to make a harmless error ruling, which is what happened in the Smith case, which was after Medjuk. The court the court in the Smith case found that the jury, that the jury didn't the jury was not required to find jurisdiction, the factual element of jurisdiction, and, nevertheless, the court there found that it was harmless. And Medjuk and the Smith case does follow the Medjuk case. And with Judge Kaczynski's permission, if I may, everything has been focused on the issue of jurisdiction. We have to wrestle with that. The issue of the harmless error analysis, we have to deal with that. And I think we've had a full discussion. But I'm troubled about another aspect of this trial, and that is the fact that the March, you know, count five was presented to the jury strictly on the theory that there was a false statement or representation. Can you please tell me what that false statement or representation was? I know what it is in respect to the February report, but I'll be darned searching through the record if I can find anything that this said in the March report that was false. It seems to me that this is an issue of concealment, and I think that would be appropriate, but it wasn't charged to the jury since we're talking about charging the jury properly. Your Honor is correct that this case with regard to count five did was a false documents case, and we must prove falsity. With regard to that report, and the appellant's report boils down to a specific evidence. As Judge Kaczynski would ask you, tell me where the false statement is. The falsity is that it was a February report, and the data was changed for February. So this is the March report, right? I think the one you're thinking of, Your Honor, is actually a false statement. How far is the February? Yes, Your Honor. February 28th, I think, right? Yes. No. The report, Your Honor, was for February, not specifically for February 28th. And that really is what the falsity is. The report said this is the data for February, and it listed some data for February 28th. That data had been changed from data that had been collected for February 27th. It's not a — it's — Did the reports ask that he list all the data that was accumulated during the month of February, and he falsely stated that this is the data? I don't read it that way. I see the report simply saying that here is the February 28th data, and it's silent about the prior data. Your Honor, the report is at page 207 of the excerpts of record. It's the data for February 2003. There was testimony that the defendant received data for February 27th. Where did he make a false statement? That's all I want to know. I think this is a concealment case, quite frankly. By changing the February 27th data out of the report, he made a false statement. It's — it's fair to look in judging falsity at — beyond the four corners of the document. It's not — That's an omission. That's a concealment. He concealed all the other information that he arguably should have reported. And, indeed, there's plenty of evidence to support a conviction. But I just don't see — it seems to me that we're commingling here under the concept of the false statement of the 1001, the two aspects of 1001, both falsity and concealment. This is a concealment case, unless you can dissuade me otherwise. They are — the falsity and concealment are not mutually exclusive. They can — the same statement can violate both. Different elements, though, different elements, different elements. The jury has to be told on concealment that he had to do the report. He didn't do it. That — well, I would argue that there's no — it doesn't matter — it doesn't matter whether it was — where the elements of concealment are, because we are proceeding under a false — under a false statement. I think inappropriately so. I don't see the false statement. But the fact that — Tell me. The fact that it may have also violated the concealment problem does not mean it's not false. It's false. Fine. If you can tell me anything false in what he submitted on the February 20th report, I would agree with you. But I don't see it. It's not enough that it be — it be a half-truth. You can look beyond the four corners of the document. There's a — the Mayberry case, which I cited in my papers, was a case of this circuit which said that there was a report submitted for a loan application in which it listed $5,000 in the defendant's account. And there was evidence at trial which showed that the $5,000, which was literally in that account, was nevertheless a false statement. Not concealment, but a false statement because it did not represent a cash asset of the defendant. In other words, it's fair to look beyond the four corners of the document to see whether or not the — How can you look beyond the four corners of the document when you're talking about a false statement that has to be referable to the document? That is the basis of the false statement. I don't understand that. Well, it requires — If you look beyond the document, then it seems to me you're talking about concealment. He shouldn't have produced something that he didn't produce. Let me ask it this way. Does this report purport to be a representation of all samples taken during the month of February? It purports to be a representation of the samples for February for these listed sites. There was a dispute, which is not implicated here, about whether there were some other sites that are not listed in this report that were being sampled and whether those had to be reported or not, but that's not what's implicated here. It does purport to be the February data for the sites listed. So to the extent — I still don't quite understand your answer, but if I represent that these are the samples for February and I omit one, that is concealment, but it's also a false representation as to the number of samples that have been taken and that are purportedly included, the implication being that these are all the samples and, in fact, they're not. That is essentially correct, Your Honor, that it can be both a false statement and an omission. So coming back to then, how is this document such that it is an accurate statement in one respect? There's no misstatement on this document of any of the dates that are actually reported. It is a concealment of the fact that there was another sample that would be admirational to these. If the report is a report purporting to show all samples taken, then it seems to me I would read it as a false statement. But if all it was understood to be was a representation of the samples on given dates, then I see Judge Block's problem. So what's the backing to make it the former, that is, that it was a representation of all samples taken at these sites during the month of February? Where does it fall for that information, in other words, in that particular report? Your Honor, there was evidence at trial from the person at the report. What does the report call him to say? I mean, I just don't have the answer. You could answer my question, and then you can answer Judge Block. Your Honor, I understand the question is what is it that causes this to be not solely an omission, but a false statement? Why is it all of the information? How did the jury understand this to be? Is this supposed to be a complete statement of all samples taken? That's what this document was understood to be by DEQ? That's correct, Your Honor. And what's the evidence of that? The evidence was the testimony at trial of the person who prepared this report at the defendant's direction, Mariano Iglesias, whose signature is all down the left. And he explained how it was always the custom to take data on Thursdays. That's why you see that the date range goes the 6th, the 13th, the 20th, and it should have been the 27th, and that the data came in on the 27th contained numerous results, 20 results, positive results for bacteria that was in the water that the defendant did not want to submit to DEQ, and that's why he requested additional samples to be taken the next day. So the jury heard evidence that the defendant told Iglesias to switch the data. That's concealment for sure, but where is the false representation that the document required him to state that this represents all of the samples that we took in February? That would be a false statement or a false representation, but I just want to know where he's called upon to make that statement or representation in that document. Because that was the custom and practice in how those reports were compiled. It's all in custom and practice now to establish falsity, right? If there's an expectation that that's what the report says, in addition, the report clearly states that it's for February 2003 and not solely the ‑‑ if it were simply a document that contained results for February 28th or any other particular day, I would concede that we would have exactly the problem Your Honor suggests. But this is a report for all of February 2003, so it is to include the data for February 2003. The jury heard evidence that there was data for February 27th that was intended for this report. In fact, the report had been compiled. That was a Thursday date, right? Yes. So these are all Thursday dates that are shown here, except one? Yes, Your Honor. Thank you. Okay. Thank you. I'm going to give him about two minutes left for rebuttal. Thank you, Your Honor. Thank you. In brief rebuttal, we submit that Count 5 is a concealment allegation. It's a concealment matter. And to the extent that the prosecution contends that it's not concealment, we're entitled to an acquittal on that count because it is a concealment and not a false statement. Well, it's a misstatement because if, in fact, the recipient of the report in the practice is to submit Thursday data and then instead of using Thursday data, he switches, it's a misrepresentation as to the fact that there was no other data that they could use, so they had to do it on a different date. Correct. And that different date is reflected in the report. The different date is reflected in the report. It's reflected on the 28th, which is Friday. It doesn't say it was done on a Thursday. So to that extent, we submit that that does not make it a misrepresentation. Furthermore, with respect to Smith, we don't believe that Smith is really applicable to this case, in the extent that in Smith the defendant had the opportunity to submit evidence on the issues on the jurisdiction. That wasn't the circumstance here. What we had here was a complete removal from the jury of the jurisdictional issue, which, therefore, we submit makes this a structural error entitled to reversal or an acquittal. As well, alternatively, it cannot be harmless under this circumstance, given that the defendant was not allowed to contest the jurisdiction. Did you make an offer of proof as to what you would have submitted? Well, we never had an evidentiary hearing. At a pretrial hearing, non-evidentiary, the government moved to in limine, not evident, but in limine to keep us from introducing. I understand that. But often one makes an offer of proof to show what you prevented me from putting in. If I were permitted, contrary to your ruling, Judge, this is the evidence I have that you're keeping from me. What we argued, or one of the things, yes, excuse me, Your Honor, but one of the things we argued to the court and submitted or contended was that when you read the Federal Register that the government relies on, it doesn't state that this promisee is actually granted. Furthermore, when one looks down to the bottom, it states that if no timely and appropriate request for hearing received and the regional administration does not elect to hold a hearing on his own motion, this determination shall become effective. And our contention was is that the government, who has the burden of proof, has to show none of these things were done and that this became permanent. And they did not. There is nothing of record to show that. Furthermore, this Federal Register was never submitted at court or at trial to the jury. It was never put in place as evidence. All these were pretrial, non-evidentiary hearing in this case where this determination was made. And we submit that there were factual disputes that necessitated this going to the jury. Thank you. What do you think about NAIDA? Does NAIDA make it a subject of promise here? No, we would think not because, again, that was dealing with an omission. Here, as I think was pointed out, this was not an omission of an instruction to the jury. The jury was given the instruction on jurisdiction. However, the jury was told, you don't decide that. It's been decided as a matter of law that jurisdiction exists. They were told that before the trial began. They were told that after the evidence was concluded. So beginning of trial, the jury knew jurisdiction was never at issue. You don't have to even listen to any evidence on jurisdiction. Then again, at the end of trial, they were told jurisdiction is established by a matter of law. What we have here is what was existing in Gaulden and Medgar, a removal of the issue from the jury. It wasn't an omission of an instruction. It was a removal of the issue from the jury. The factual aspects that compose jurisdictional issues, that's what was removed from the jury. The factual aspects. They're not going to decide what the law is. That's not what you're arguing, is it? No. They would look at the facts to determine whether the facts show that jurisdiction existed. So that aspect was removed from the jury. To the extent that there are facts here that, you know, are embraced within the concept of jurisdiction in this particular case, that had to be presented to the jury. That's basically where we come at, isn't it? That's correct. And if we had been allowed to present evidence at trial, we would have shown that, one, in response to discovery, the prosecution says, we're not aware of any written delegation of authority. And then that supports the other position, our position, that there really does not exist. Okay. Thank you.
judges: Kozinski, Fisher, Block